Filed 12/4/25  P. v. Valenzuela CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ROGELIO JUAN VALENZUELA,<br><br>        Defendant and Appellant. | B339610<br><br>(Los Angeles County Super. Ct. No. SA107610) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William L. Sadler, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Kenneth C. Byrne and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Rogelio Juan Valenzuela (Valenzuela), appeals following his no contest plea to one count of assault with force likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4), and one misdemeanor count of carrying a concealed firearm within a vehicle in violation of Penal Code section 25400, subdivision (a)(1).[1]  The trial court granted a certificate of probable cause.  Valenzuela argues the court erred when it denied his preplea motion for mental health diversion. We affirm.

## BACKGROUND

Valenzuela admitted to firing a shot from a vehicle following a confrontation with his former girlfriend (A.V.) on Thanksgiving Day in 2022.  The shooting arose out of an altercation that occurred when Valenzuela and his new girlfriend went to A.V.'s home to pick up a dog that he shared with A.V. during their relationship.

A.V. was awakened early that morning by a phone call from her sister, who told her that Valenzuela and his new girlfriend were out in front of her house.  Because A.V. was recently threatened by the new girlfriend, she immediately called the police.

While A.V. was on the phone with the police, she noticed that her two younger siblings were walking out to the front of the house.  She walked out after them.  In addition to her siblings,

_____

[1]      Unless stated otherwise, references to statutes are to the Penal Code.

2

A.V. saw Valenzuela and his new girlfriend. Valenzuela was wearing a black ski mask. She also saw that her mother and grandmother were there. Valenzuela was talking to A.V.'s mother, and when A.V. joined them, Valenzuela approached her and pushed her back. A.V. was armed with pepper spray, so she used it, and tried to spray at the car Valenzuela arrived in.

By this time, Valenzuela's new girlfriend was already back in the car. There was also someone in the driver's seat wearing a ski mask. Valenzuela got in, and the car drove off. As the car was driving away, Valenzuela leaned out of the passenger window and fired one shot in the direction of A.V. and her family. No one was hit.

Valenzuela was charged in an information with assault with a firearm under section 245, subdivision (a)(2), and having a concealed firearm in a vehicle in violation of section 25400, subdivision (a)(1), a misdemeanor. At the pretrial conference, Valenzuela moved for an order granting him mental health diversion pursuant to section 1001.36. The motion was supported with a psychological evaluation from a court-appointed expert, and a letter stating Valenzuela was eligible for a community reentry program from the county Department of Mental Health.

After reviewing relevant records, conducting a diagnostic interview with Valenzuela, and administering psychological tests, the expert diagnosed Valenzuela with complex posttraumatic stress disorder (PTSD). The diagnostic interview revealed that Valenzuela grew up in a family dynamic with pervasive parental domestic violence and drug abuse. His home life was unstable, and he repeatedly moved with his mother between California and South Dakota. Valenzuela, his mother and a younger brother were frequently homeless, and when he was 17 years old

Valenzuela started living on his own and caring for his younger brother.  As a result of this lengthy history of trauma and instability, the expert concluded that Valenzuela suffers from PTSD, a qualifying mental disorder specified under section 1001.36.

The expert also opined that Valenzuela's PTSD contributed to his involvement in the shooting.  He was very fearful of A.V. and her family due to a prior incident when he was reportedly assaulted by A.V.'s sister and her boyfriend.  When her family approached him in front of A.V.'s home, he felt anxious and frightened.  He got into the car and fired the shot as a warning to them not to hurt him.  An exaggerated startle response, overestimating the level of danger, difficulty controlling his emotions, high anxiety, a state of daze accompanied by a narrowing of attention, and problems fully comprehending what is going on are all symptoms that were present for him on the day of the offense.  There was a "clear nexus" between Valenzuela's exaggerated stress response and his decision to arm himself and commit the assault with a firearm.

It was the expert's opinion that Valenzuela's PTSD and resulting behavior would respond to mental health treatment.  Because he has a history of recurrent suicidal ideations, the expert also recommended that he enter treatment as soon as possible.  In light of his history of repeated trauma and his limited support system, it would likely take between six months and two years of outpatient trauma-focused and evidence-based treatment for his symptoms to improve.  Valenzuela did not want to go to jail and said he wanted to attend treatment.  He would comply with treatment as a condition of mental health diversion.

Finally, the expert opined that if Valenzuela were to attend an outpatient treatment program with a support group component, he would be at a low risk for imminent and future violence. In this way, the expert concluded that the suitability factor in section 1001.36, based upon whether the defendant would pose an unreasonable risk to public safety if treated in the community, was met conditionally.

While the district attorney challenged the expert's conclusion that Valenzuela was eligible for mental health diversion, the opposition focused on the trial court's discretion to conclude that Valenzuela was unsuitable for it. This argument emphasized the violent nature of the charged crime. Valenzuela brought a gun to the confrontation, and whether he "intended to aim at a particular individual, at the group as a whole, or just negligently fired into the air in the proximity of a large group of people, there was more than ample opportunity that [he] could have killed someone." Moreover, the prosecution argued the case was appropriate for issuance of a protective order, and if diversion were ordered there would be no order in place to protect A.V. Thus, the prosecution argued the court should exercise its discretion to deny mental health diversion on the basis that Valenzuela would pose an unreasonable risk to public safety if treated in the community.

The court concluded that Valenzuela was at risk of committing a super strike offense, because shooting at a group of people from a vehicle could have been charged as a super strike. The court also concluded that, based on the facts of the crime, Valenzuela's PTSD did not play a significant role in the offense. Valenzuela shot at A.V. out of anger and revenge, and not as a

result of a mental disorder.  The motion for mental health diversion was denied.

When the parties appeared for trial readiness, they informed the court of a negotiated disposition.  The People added a single count of assault by means of force likely to cause great bodily injury in violation of section 245, subdivision (a)(4), and Valenzuela entered no contest pleas to that newly added charge and the misdemeanor count of carrying a concealed firearm within a vehicle in violation of section 25400, subdivision (a)(1).  The original felony charge of assault with a firearm under section 245, subdivision (a)(2), was dismissed.

Imposition of sentence was suspended, and Valenzuela was placed on probation for four years.  He was given six days of presentence credits.  Among other conditions of probation, Valenzuela was to perform 39 days of community service, make victim restitution in an amount to be determined, and complete a 52-week domestic violence counseling program.  A restraining order was issued to prohibit him from making any contact with A.V. or coming within 100 yards of her.

The trial court issued a certificate of probable cause, and Valenzuela's notice of appeal was timely filed.

## DISCUSSION

### 1.  The Relevant Law and the Standard of Review

Pretrial diversion "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890.)  The enabling statute, section 1001.36, requires that to qualify for diversion, a defendant be found both eligible and suitable.  Eligibility entails satisfaction of two prongs: (1) a defendant has been diagnosed

6

with a recognized mental health disorder, and (2) the disorder was "a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).) The second prong is presumptively satisfied "unless there is clear and convincing evidence that [the disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Ibid.*)

Once a defendant demonstrates he or she is eligible, the trial court "must consider whether the defendant is suitable for pretrial diversion." (§ 1001.36, subd. (c).) A defendant is suitable if (1) in the opinion of a qualified mental health expert, the defendant's mental health disorder would respond to treatment; (2) the defendant consents to diversion and agrees to waive their speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an "unreasonable risk of danger to public safety" as defined in section 1170.18 if treated in the community. (*Id.*, subd. (c)(1)-(4).) "We review the trial court's factual findings as to the enumerated statutory criteria for substantial evidence. [Citation.] Under this deferential standard of review, ' "we must view the evidence in the light most favorable to the People and must presume in support of the judgment of every fact the trier could reasonably deduce from the evidence." ' [Citation.]" (*People v. Brown* (2024) 101 Cal.App.5th 113, 121.)

After examining the court's factual findings, "[w]e review the trial court's denial of mental health diversion for abuse of discretion. [Citation.] ' " '[T]he term judicial discretion "implies absence of arbitrary determination, capricious disposition or whimsical thinking." ' [Citation.] '[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the

7

circumstances being considered.' " ' [Citation.] 'It is appellant's burden on appeal to establish an abuse of discretion and prejudice.' [Citation.]" (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213 (*Pacheco*).)

**2. Valenzuela's Arguments and Our Analysis**

Valenzuela argues that the trial court's factual conclusions: (1) his mental disorder did not play a part in his offense; and (2) that he is at risk for committing a super strike offense are unsupported by substantial evidence. Therefore, the court abused its discretion when it concluded Valenzuela was neither eligible nor suitable for mental health diversion.

Whether or not Valenzuela's PTSD played a part in his offense presents a close question. The court-appointed expert determined that Valenzuela's PTSD symptoms played a part in his crime. In her words, there was a "clear nexus" between his symptoms and his decision to arm himself and commit the assault. The trial court determined Valenzuela's PTSD did not play a part in the crime because he shot out of anger and revenge, and not as a result of his disorder. However, once a defendant is diagnosed with a qualifying disorder under section 1001.36, it is presumed the disorder played a part in the crime, "unless there is clear and convincing evidence that [the disorder] was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

A conclusion that Valenzuela was ineligible for diversion because his PTSD did not play a part in the offense is questionable on this record, given the psychologist's detailed report and contrary conclusion. But even if the eligibility finding was not supported by clear and convincing evidence, which we do

8

not decide here, we would not reverse because any error was harmless.  (*People v. Watson* (1956) 46 Cal.2nd 818, 836.)  The trial court's determination that Valenzuela was unsuitable for diversion because he posed an unreasonable risk to public safety was supported by sufficient evidence and provided a valid and independent basis for the court to exercise its discretion to deny diversion.

To deny diversion due to Valenzuela's risk to public safety, the trial court was required to determine that there was an unreasonable risk that he would commit a serious, violent felony of the type enumerated in section 667, subdivision (e)(2)(C)(iv). (See §§ 1001.36, subd. (c)(4), 1170.18, subd.(b) & (c).)  "The violent felonies encompassed in this definition 'are known as "super strikes" and include murder [and] attempted murder, . . .' " (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).)

Here, there is no dispute that Valenzuela fired a shot in the vicinity of A.V. and her family while driving away from the Thanksgiving Day confrontation.  While Valenzuela said he shot in the air, there was also evidence that he shot in the direction of A.V. and her family.  As the trial court observed, shooting at a group of people could have been charged as a super strike offense.

"[T]he fact that the Legislature enumerated a list of offenses that render a defendant ineligible *as a matter of law* for mental health diversion (§ 1001.36, subd. (b)(2)) does not demonstrate that the Legislature intended to preclude a trial court from relying solely on the *circumstances* of an offense or offenses in determining either eligibility or suitability for diversion.  Section 1001.36 specifies that the trial court may consider the 'the defendant's violence and criminal history, *the*

*current charged offense*, and any other factors that the court deems appropriate,' in determining eligibility. (§ 1001.36, subd. (b)(1)(F), italics added.) While the statute does not specify the factors that a trial court may consider in determining *suitability* (see § 1001.36, subd. (b)(3)), it permits the court to determine whether a defendant has made 'a prima facie showing . . . that the defendant *and the offense* are suitable for diversion' (italics added), thereby evincing the Legislature's intent that a trial court be permitted to rely on a consideration of the circumstances of the charged offense in determining suitability. Finally, there is nothing in section 1001.36, with respect to either eligibility or suitability, that precludes a trial court from relying primarily, or even entirely, on the circumstances of the charged offense or offenses in denying a motion for diversion." (*People v. Bunas* (2022) 79 Cal.App.5th 840, 861–862 [Emphasis in original.] (*Bunas*).) Such is the case here.

Valenzuela brought a firearm to a confrontation with his former girlfriend and her family. There is evidence he fired the shot in their direction. As the trial court observed, "[T]he most direct evidence that a defendant is at risk of committing a super strike offense is the fact that the conduct of which he is accused of committing constitutes a super strike offense even if it's not charged in the information." Viewing the evidence in the light most favorable to the People, and presuming in support of the judgment of every fact the trier could reasonably deduce from the evidence, we cannot conclude that the trial court's decision to deny diversion was unsupported by the evidence or an abuse of discretion. In context, it was neither arbitrary nor capricious.

Valenzuela cites to *People v. Whitmill* (2022) 86 Cal.App.5th 1138 (*Whitmill*) to argue that the trial court wrongly

considered testimony from his preliminary hearing to reach its conclusions on eligibility and suitability.  But *Whitmill* contains no such prohibition.[2]  The *Whitmill* court reversed a decision to deny diversion after it determined that the trial court based the denial on a defendant's future dangerousness under the general sentencing guidelines set forth in rule 4.410 of the California Rules of Court, rather than the specific standard contained in section 1001.36, subdivision (c)(4).  (*Whitmill, supra,* 86 Cal.App.5th at pp. 1147, 1150-1151.)  Here, the trial court applied the correct standard.

Valenzuela also draws a parallel between his case and *Moine, supra,* 62 Cal.App.5th 440.  In *Moine*, the defendant was charged with assault and making criminal threats after he got into a fistfight with a fellow patient at an urgent care clinic, and at a different clinic had made threats about returning with a firearm.  (*Id.* at pp. 445-446.)  Valenzuela says his case is similar because neither he nor Moine were charged with super strike offenses.  But *Moine* did not involve the defendant's use of a firearm.  Moreover, as the trial court observed, this case could have been charged as a super strike; in other words, it is the "circumstances of the charged offense," rather than the actual offense charged, that provide the basis for the court's suitability finding.  (*Bunas*, *supra*, 79 Cal.App.5th at p. 862.)

Finally, Valenzuela argues that it is logically inconsistent to deny him diversion because he was out on bail while his charges were pending.  We fail to see the inconsistency.

---

[2]    Decisions are authority only for points of law actually considered and decided.  (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1043; *In re Chavez* (2003) 30 Cal.4th 643, 656.)

The court could reasonably determine that the possible revocation of bail, the pendency of a felony charge and a possible prison sentence were sufficient motivation for Valenzuela to remain law abiding while awaiting trial.  Moreover, to hold that pretrial release on bond is inconsistent with the denial of pretrial diversion would nullify the discretion the Legislature entrusted to the courts to weigh competing interests in section 1001.36 in every case involving a defendant who is not in custody.  If that is what the Legislature intended, it would have said so.  Section 1001.36 contains no such directive.

Similarly, the grant of probation in this case was not unreasonable or inconsistent with the denial of diversion. Pretrial diversion "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." (*Sarmiento v. Superior Court, supra,* 98 Cal.App.5th at p. 890.)  Valenzuela's conditions of probation include a protective order prohibiting him from any contact with A.V.  Such an order would not be possible if the court ordered diversion. (See §§ 136.2 & 1203.097.)

This case presents close questions, and at the trial court level reasonable minds could differ on whether Valenzuela is at risk to commit a super strike.  But on appeal, we cannot conclude the trial court abused its discretion because the record could support either conclusion.  (See *People v. Brown, supra*, 101 Cal.App.5th at p. 124.)  Valenzuela has not shown an abuse of discretion.  (*Pacheco, supra*, 75 Cal.App.5th at p. 213.)

## DISPOSITION

The denial of mental health diversion and the judgment of conviction are affirmed.

_____,
SIGGINS, J.*

We concur:


_____,
LUI, P. J.


_____, J.
CHAVEZ, J.

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13